UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DOMINICAN MANAGEMENT, LLC<br>d/b/a PLAZA CENTRAL, GEORGE L.<br>HARRIS, and CAROLYN HARRIS, | §<br>§<br>§<br>§ | |
| Plaintiffs, | §<br>§ | |
| v. | § | CIVIL ACTION NO. 3:13-CV-2984-B |
| CITY OF ARLINGTON, TEXAS, | §<br>§<br>§ | |
| Defendant. | §<br>§ | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant's Motion to Dismiss for Lack of Jurisdiction (doc. 6), filed on August 22, 2013. For the reasons that follow, Defendant's Motion is **GRANTED in part** and **DENIED in part**.

### I.

### BACKGROUND[1]

Plaintiffs Dominican Management, LLC ("Dominican"), George L. Harris, and Carolyn Harris allege that Defendant City of Arlington (the "City") has interfered with the use and enjoyment of their property by imposing restrictions and impermissibly denying them permit applications regarding the renovation of a shopping mall. They have brought suit under the Texas constitution for an unconstitutional taking, as well as under 42 U.S.C. § 1983 for violations of their federal constitutional rights to procedural due process, substantive due process, and equal protection.

---

[1] The Court draws its factual account from the parties' pleadings and accompanying appendices. Unless characterized as a contention by one of the parties, these facts are undisputed.

Defendant alleges all of Plaintiffs' claims are unripe. Accordingly, it has moved for dismissal and an award of attorneys' fees and costs.

A.      *Factual Background*

In November 2012, Dominican purchased portions of a property formerly known as Six Flags Mall in order to create a Hispanic-oriented shopping center. Compl. 2. Dominican bought the mall proper and the JC Penney anchor store (together, the "Property"). Harris Decl. 1-2. The Property represents part of, but not the entire, parcel originally platted for Six Flags Mall. Def.'s Br. 1. Indeed, Dominican did not buy the "Dillard's outlet department store, the former Sears anchor store, the former Macy's anchor store, the Cinemark movie theater, or any of the undeveloped pad sites, the Firestone store, the motorcycle shop, the events center or any other parcels located along the perimeter of the mall." Harris Decl. 1-2.

Plaintiffs allege that after Dominican purchased the Property, it began cleaning, renovating, and "follow[ing] all procedures necessary to obtain City permits." Compl. 3. Nevertheless, "at some point between closing and May 2013," Plaintiffs claim the City "flagged" the Property and would not issue any permits.[2] *Id.* In response, Plaintiff George Harris met with several city officials, including Jim Parajon, the Director of Community Development and Planning, city inspectors, and the city attorney. *Id.* Mr. Harris claims the officials told him the entire area had to be replatted, including the Property, the Dillard's, the movie theater, and other parcels that Dominican did not own. *Id.* This would require Dominican to "receive every other property owner's consent for the replat." *Id.*

---

[2] Plaintiffs do not clarify which procedures they followed to obtain City permits. Further, Plaintiffs do not specify for which permits they applied, or which permits they were denied or received before Defendant allegedly ceased issuing them.

Plaintiffs also claim that officials told Mr. Harris there was not enough parking for the Property, the mall sign had to be removed, and a new landscape plan had to be submitted, though the area for the landscape plan was located on other owners' property. *Id.* at 3-4. In addition, Plaintiffs allege that Defendant claimed Plaintiffs were attempting to change the Property's usage, though Plaintiffs intended to continue to operate the Property as a shopping mall. *Id.* at 4. Plaintiffs claim none of these issues was presented or even mentioned to Mr. Harris during a meeting he had with the City in June 2012, prior to Dominican's purchase of the Property. *Id.* At that time, Plaintiffs allege the City represented that there were no problems with platting, parking, or signage. *Id.* at 3.

The City challenges these allegations. It relies on a declaration from Jim Parajon, who states that "[s]ince December 2012, Arlington's Community Development and Planning office . . . communicated with Mr. George L. Harris and his representatives about sequential steps necessary to operate business on his portion of the Six Flags Mall site," including "the replatting of platted lots, submittal of a site plan, applying for building permits, and obtaining certificates of occupancy following inspection approvals." Parajon Decl. ¶ 5. What's more, Mr. Parajon met with Mr. Harris several times about the need to replat before obtaining building permits and certificates of occupancy. *Id.* Despite these meetings, the City insists that Dominican improperly commenced construction without the necessary building permits. Def.'s Br. 3. Consequently, the City instructed Dominican to stop all construction until Dominican obtained a replat and applied for and received the required permits. *Id.* at 4. The City claims it did not, however, "flag" the Property as Plaintiffs allege. *Id.*

On July 7, 2013, almost eight months after Dominican purchased the Property and three and a half weeks before filing the present lawsuit, Dominican submitted a proposed replat to Defendant.


Def's Br. 4. At the time the City filed the present Motion, the replat application was still under review, and no final decisions had been made by Arlington concerning signage, parking, or landscaping the property. *Id.*

B.   *Procedural History*

On July 31, 2013, Plaintiffs filed their Original Complaint (doc. 2) with this Court. On August 22, 2013, Defendant filed its Motion to Dismiss (doc. 6). Plaintiffs filed a Response on September 12, 2013 (doc. 9), and Defendant timely filed a Reply (doc. 11). As the Motion has been fully briefed, it is now ripe for review.

## II.

## LEGAL STANDARD

A.   *Rule 12(b)(1)—Ripeness*

A motion to dismiss brought pursuant to Rule 12(b)(1) "allow[s] a party to challenge the subject matter jurisdiction of the district court to hear a case." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001); Fed R. Civ. P. 12(b)(1). "Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Ramming*, 281 F.3d at 161. It is the party asserting jurisdiction who bears the burden of proof. *Id.*

As ripeness is an essential component of federal subject matter jurisdiction, a court should dismiss a case when it is abstract or hypothetical. *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 833 F.2d 583, 586 (5th Cir. 1987). In other words, a case is not ready for adjudication if further factual development is required. *Id.* at 587.

III.

ANALYSIS

A.  *Unconstitutional Taking Under the Texas Constitution*

Plaintiffs first allege that the City has interfered with their right to use and enjoy the Property by imposing restrictions and impermissibly denying them permit applications. Compl. 5. Plaintiffs insist this interference amounts to an unconstitutional taking under Article 1, Section 17 of the Texas constitution, which provides that: "No person's property shall be taken, damaged, or destroyed for or applied to public use without adequate compensation being made, unless by consent of such person," and only if the taking, damage, or destruction is for, *inter alia*, "the ownership, use, and enjoyment" of the property. Tex. Const. art. 1, § 17(a)(1).

"To bring a regulatory takings claim, the claim must be ripe for resolution." *Buffalo Equities, Ltd. v. City of Austin*, No. 03-05-00356-CV, 2008 WL 1990295, at *7 (Tex. App.—Austin May 9, 2008, no pet.). This is because a "court cannot determine whether the regulation has gone 'too far' unless it knows how far the regulation goes." *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 924 (Tex. 1998)(citing *Macdonald, Sommer & Frates v. Yolo Cnty.*, 477 U.S. 340, 348 (1986)).Texas follows federal jurisprudence, which requires "a final decision regarding the application of the regulations to the property at issue." *City of Carrollton v. HEB Parkway South, Ltd.*, 317 S.W.3d 787, 794 (Tex. App.— Fort Worth 2010, no pet.); *Mayhew*, 964 S.W.2d at 929 (citing *Suitum v. Tahoe Reg'l Planning Agency*, 520 U.S. 725 (1997)). A "final decision" usually demands both a rejected development plan and a denial of a variance from the controlling regulations. *Mayhew*, 964 S.W.2d at 929. Nevertheless, futile variance requests or re-applications are not required. *Id.*

The City argues that, because Plaintiffs did not receive a "final decision" on their replatting application before bringing suit, their takings claim is not yet ripe. Def.'s Br. 7-10. Though Plaintiffs concede that "in order for a regulatory takings claim to be ripe, there must be a final decision regarding the application of the regulations to the property at issue," they nevertheless insist that their case is ready to be adjudicated. Pls.' Resp. 7 (quoting *Mayhew*, 964 S.W.2d at 929). They advance three reasons why: (1) the law does not require them to replat the Property; (2) any effort to obtain a final decision before bringing suit would have been futile; and (3) at minimum, they have brought a valid temporary takings claim. Pls.' Resp. 6. The Court considers these arguments below.

1.  The law requires Plaintiffs to replat

Plaintiffs insist that they did not need to seek a final decision on a replat application before bringing suit because neither the City's ordinances nor Texas law requires they replat the Property. Pls.' Resp. 8. They claim that the statutes on which the City relies—namely, Section 3.01(A) of the Arlington, Texas Code of Ordinances and Section 212.004 of the Texas Local Government Code—are directed at property owners who subdivide their property. As Plaintiffs did not subdivide the Property but rather purchased it after the Property had already been subdivided, they argue the statutes are inapplicable to them. *Id.* The City disagrees and argues that the statutes require Plaintiffs to replat because they purchased subdivided portions of previously-platted property. Def.'s Reply 4.

The parties have not provided any authority that directly addresses the competing views of the code and ordinance at issue. However, from the clear and unambiguous text of both statutes, the Court agrees with Plaintiffs' interpretation. *See Wind Mountain Ranch, LLC v. City of Temple*, 333 S.W.3d 580, 581 (Tex. 2010) ("When the words of the statute are clear and unambiguous we

interpret them according to their plain and common meaning."). Section 3.01(A) of the Arlington, Texas Code of Ordinances governing subdivision regulation states: "Every owner of any tract of land *who divides the tract* into two or more parts shall cause a plat to be made, which accurately describes and locates the entire tract by metes and bounds as required in this ordinance." Arlington, Tex. Code. of Ordinances, Subdivision Ch. § 3.01(A) (emphasis added). Similarly, Section 212.004(a) of the Texas Local Government Code states: "The owner of a tract of land located within the limits or in the extraterritorial jurisdiction of a municipality *who divides the tract* in two or more parts to lay out a subdivision of the tract . . . must have a plat of the subdivision prepared." Tex. Loc. Gov't Code Ann. tit. 7, § 212.004(a) (Vernon 2013) (emphasis added).

Both provisions address owners who subdivide their tracts, not owners who acquire land that has already been subdivided. Consequently, Plaintiffs seem correct that these provisions alone do not require them to replat, unless they were subdividing the Property. Though the City dismisses Plaintiffs' argument, it fails to provide any authority to support the competing view that property that was previously subdivided must be replatted under these specific provisions. Def.'s Reply 4 ("In other words, Plaintiffs claim that because they acquired a parcel that had been illegally subdivided at some point in the past and which had not been replatted upon division, Plaintiffs and the Property are somehow entirely absolved from undertaking the developmental steps required by Arlington's ordinances."). Further, the City concedes that "[s]tate law and Arlington ordinances require that a new plat be approved whenever property . . . *is subdivided*." Def.'s Br. 5 (emphasis added).

However, this does not end the Court's analysis. As the City points out, Plaintiffs had to submit a plat in order to apply for any building permits or a certificate of occupancy. Def.'s Reply 4-5.

Indeed, "no building permits for any construction activity shall be issued by the City until a plat is approved and filed of record." *See* Arlington, Tex. Code of Ordinances, Subdivision Ch. § 1.06. Further, certificates of occupancy "shall be applied for coincident with the application for building permit," and may only be issued upon a finding that "the premises complies with the Building Code, provisions of the 'Zoning' Chapter of the Code and all other applicable development regulations of the City of Arlington." *See* Arlington, Tex. Code of Ordinances, Zoning Ch. § 17-500(B). Plaintiffs do not dispute they required building permits or a certificate of occupancy for the Property, or that they began renovation without the necessary permits. *See* Def.'s Br. 8; Compl. ¶ 9. They also do not dispute that these ordinances require a plat be submitted. Finally, they have not demonstrated that a plat for the Property was already approved and on file. Consequently, the Court finds that Plaintiffs were required to replat and, by extension, obtain a final decision before filing suit.

2. <u>Plaintiffs' futility argument is without merit</u>

Plaintiffs argue that any attempt to obtain a final decision would have been futile in light of the City's alleged misrepresentations about the Property. Pls.' Resp. 11-13. They claim that, "despite representing to Plaintiffs that there were no issues with parking, platting, surveying, or signage, Defendant [has] since changed its position and represented that Plaintiffs are required to replat [the] [P]roperty and submit a landscape plan to plant trees on property Plaintiffs do not own." *Id.* at 11. Plaintiffs also claim the City told them that reciprocal parking would not be allowed and that a sign must be taken down, though such requirements were not enforced on the Property (or similar properties) in the past. *Id.* Plaintiffs attribute these changes to the City's interest in pursuing another development opportunity with Six Flags Mall—namely, demolishing it and constructing new

buildings for General Motors and Android. *Id.* at 13. They highlight emails obtained from the City that discuss negotiations between the City and third parties about this separate project. *Id.* They also point out an email that indicates that Jim Parajon wished to "red flag" the Six Flags Mall. *Id.* The City insists Plaintiffs are simply misconstruing the law by suggesting that a prediction of futility is a substitute for obtaining a decision on their initial application. Def.'s Reply 7-8.

Plaintiffs are correct that the law does not demand they make futile variance requests or reapplications before bringing a takings claim. *See Mayhew*, 964 S.W.2d at 929; *see also Mont Belvieu Square, Ltd. v. City of Mont Belvieu*, 27 F. Supp. 2d 935, 940 (S.D. Tex. 1998). However, the Court is unaware of—and Plaintiffs have failed to provide—any authority that shows that futility excuses Plaintiffs from obtaining a decision on their *initial* application. Indeed, the very case on which Plaintiffs rely, *Mayhew*, states that the "essential prerequisite" of a takings claim "requires a final and authoritative determination of the type and intensity of development legally permitted on the subject property." *Mayhew*, 964 S.W.2d at 929. Further, the *Mayhew* court's discussion of futility was in the context of the plaintiffs' failure to request a variance or file another planned development after their plan was already rejected. *Id.* at 932 ("We accordingly conclude that, under the circumstances of this case, the Mayhews were not required to submit *additional alternative proposals* . . . to ripen this complaint.") (emphasis added). The court thus concluded that "after receiving a rejection by a city, property owners should not be required to submit *additional* permits for development that would render the development unprofitable before being able to seek judicial relief." *Buffalo Equities*, 2008 WL 1990295, at *8 (emphasis added). The *Mayhew* court was silent with respect to plaintiffs who file suit in advance of any rejection. Thus, Plaintiffs' argument about futility is unpersuasive.

The cases on which *Mayhew* relies reinforce this point. *See, e.g., MacDonald*, 477 U.S. 340 (holding that court could not determine whether a "taking" had occurred in absence of final and authoritative determination by county, even though county planning commission rejected plaintiff's proposal to subdivide property); *Kawaoka v. City of Arroyo Grande*, 17 F.3d 1227 (9th Cir. 1994) (holding that "as applied" substantive due process challenge was not ripe because owners had never submitted formal development plans or filed specific plan application), *cert denied*, 513 U.S. 870 (1994); *Hoehne v. Cnty of San Benito*, 870 F.2d 529, 535 (9th Cir. 1989) (discussing futility in the context of re-applications and re-submissions after plaintiffs challenged the denial of their subdivision application). For example, in *Southern Pacific Transportation Co. v. City of Los Angeles*, 922 F.2d 498, 504 (9th Cir. 1990), the Ninth Circuit stated:

> While it is true that something called a "futility exception" exists, this exception serves only to protect property owners from being required to submit multiple applications when the manner in which the first application was rejected makes it clear that no project will be approved. The futility exception does not alter an owner's obligation to file one meaningful development proposal.

Plaintiffs here never waited to receive a first rejection of their plat application, so their claim of futility is premature.

  3. <u>Plaintiffs have failed to establish a temporary takings claim</u>

Plaintiffs insist, if nothing else, they have established a temporary taking. In particular, they allege the City "deprived [them] of all economically viable use of [the] Property and/or their right to the use and enjoyment of the Property" by requiring them to replat and submit a landscape plan for land they do not own. Pl.'s Resp. 10. They claim that they have suffered significant damages as a result of unreasonable, unnecessary, and impermissible delays from these demands. *Id.* at 9.

According to the Supreme Court, an owner may state a takings claim for the temporary denial of all use of his property. *See First English Evangelical Lutheran Church of Glendale v. Cnty. of Los Angeles*, 482 U.S. 304, 321 (1987). Indeed "temporary" takings are no different from permanent takings, for which the Constitution requires compensation. *See id.* at 318. Nevertheless, cases involving "normal delays in obtaining building permits, changes in zoning ordinances, variances, and the like" do not necessarily rise to the level of takings. *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 329 (2002) (citing *First English*, 482 U.S. at 321). In other words, an owner "cannot maintain a takings claim . . . simply because he is not allowed to take a certain action without a permit." *Garrett Operators, Inc. v. City of Houston*, 360 S.W.3d 36, 43 (Tex. App. —Hous. 2011, no pet.) (citing *Tahoe-Sierra*, 360 S.W.3d at 43).

After reviewing the pleadings and the law, the Court finds that Plaintiffs' temporary takings claim is also unripe. As the Texas Court of Appeals has stated,

> [a]s a prerequisite to the ripeness of regulatory takings claims, there must be a final decision regarding the application of the regulations to the property at issue. That is, a landowner may not establish a taking before a land-use authority has the opportunity, using its own reasonable procedures, to decide and explain the reach of a challenged regulation.

*City of Carrollton*, 317 S.W.3d at 794-95 (internal quotation marks and citations omitted). Plaintiffs base their claim on Mr. Parajon's alleged demand that they include other owners' property in their replat and landscape plan. However, these statements—even if true—do not amount to a final decision by the City on Plaintiffs' application materials. *See Garrett Operators*, 360 S.W.3d at 42 (finding that a meeting between a landowner and a city manager was not a "final decision" because nothing was promulgated in a formal manner, there was no indication the agency expected

compliance after the conversation, and the meeting did not fix a legal relationship between the parties). Further, Plaintiffs initiated this suit before such a decision could be reached.[3] Consequently, "no regulatory taking has been established because the extent of the restriction on [Plaintiffs'] property is not yet known."[4] *City of Carrollton*, 317 S.W.3d at 795.

For the foregoing reasons, the Court finds that Plaintiffs' regulatory takings claim under the Texas constitution is unripe. The Court therefore lacks subject matter jurisdiction, and Plaintiffs' claim is **DISMISSED WITHOUT PREJUDICE**.

B.   *42 U.S.C. § 1983 Claims*

The Court now considers Plaintiffs' § 1983 claims, which the City also moves to dismiss for being unripe. Plaintiffs have conceded that if their takings claim is not ripe, their § 1983 claims are similarly not ready for adjudication. Pls.' Resp. 14. In light of the Court's finding above as well as Plaintiffs' concession, the Court **DISMISSES WITHOUT PREJUDICE** each of Plaintiffs' § 1983 claims.

C.   *Defendant's Attorneys' Fees and Costs*

Finally, the Court considers whether to grant the City's request for attorneys' fees and costs. The City claims that Plaintiffs have acted in bad faith by bringing this lawsuit before a final decision

---

[3] As previously noted, Plaintiffs began their lawsuit before the City had ruled on their plat proposal and before they had even submitted a landscape plan for consideration.

[4] To the extent Plaintiffs base their claims instead on the time the City has taken to review their materials, their claim must still fail. Plaintiffs have not indicated how long they have had to wait or how this period was improper. Indeed, there is no indication that Plaintiffs have been subject to anything more than the normal delays in processing permit requests, which the Supreme Court has stated do not necessarily constitute a taking. *See Tahoe-Sierra*, 353 U.S. at 329.

was reached on their replat application. Def.'s Br. 12. Plaintiffs deny they have acted in bad faith and insist there was at least a colorable basis in law for their case. Pls.' Resp. 14-15.

It is within the Court's inherent powers to assess attorneys' fees, including when a party "has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991) (citing *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258-59 (1975)). However, the Supreme Court has cautioned courts to exercise these powers with restraint and discretion because of their potency. *See Roadway Express, Inc. v. Piper*, 447 U.S 752, 764 (1980).

With this warning in mind and in light of the analysis above, the Court declines to award the City attorneys' fees and costs. Though Plaintiffs brought claims before they were ready for adjudication, the Court does not find that they have practiced fraud upon the Court or otherwise "defiled" the "temple of justice." *Chambers*, 501 U.S. at 46. Thus, the Court is not compelled to impose such a severe remedy. Accordingly, the City's request for attorneys' fees and costs is **DENIED.**

## IV.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss (doc. 6) is **GRANTED in part** and **DENIED in part**. Plaintiffs' claims are **DISMISSED WITHOUT PREJUDICE**. However, Defendant's request for attorneys' fees and costs is **DENIED.**

**SO ORDERED.**

**SIGNED: March 17, 2014.**

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE